In Re Ja.J., Je.J. & M. J.

T.J., Appellant.

No. 01–FS–1229 to 01–FS–1231.

District of Columbia Court of Appeals.

Argued Dec. 20, 2002.
Decided Dec. 31, 2002 *.

Daniel I. Oshtry, appointed by the court, for appellant T.J.

Brenda C. Wagner, Washington, DC, appointed by the court, for appellees Ja.J., Je.J., and M.J.

Arabella W. Teal, Interim Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Sheila Kaplan, As-

* This opinion originally was issued as a Memorandum of Judgment, and is being published with some revisions at the direction of the court.

sistant Corporation Counsel, filed a brief for appellee District of Columbia.

Before STEADMAN, REID and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge:

T.J., the mother of Ja.J., Je.J. and M.J., appeals from an order terminating her parental rights. We affirm, being unpersuaded by T.J.'s claims that the trial court abused its discretion in rejecting her choice of caretakers and in overestimating the adoption prospects of the two boys, Ja.J. and Je.J. *See In re A.R.*, 679 A.2d 470, 474 (D.C.1996).

■ Preliminarily, we have jurisdiction of this appeal notwithstanding that T.J. filed her notice of appeal before the trial court had ruled on her pending motion for reconsideration. Even if the appeal was premature, as the guardian *ad litem* contends, the trial court's subsequent denial of T.J.'s motion cured that defect. *See Dyer v. Bergman & Assocs., Inc.*, 635 A.2d 1285, 1287 (D.C.1993).

■ Conceding that she could not care for the children herself, T.J. asked the court to remove Ja.J., Je.J. and M.J. from foster care and place them instead with two potential caretakers of her choosing (whom we shall identify only by their initials, S.M. and R.A.). In a similar case, we held that while it is not controlling, a competent "parent's choice of a fit custodian for the child must be given weighty consideration which can be overcome only by a showing, by clear and convincing evidence, that the custodial arrangement and preservation of the parent-child relationship is clearly contrary to the child's best interest." *In re F.N.B.*, 706 A.2d 28, 31 (D.C.1998), (quoting *In re T.J.*, 666 A.2d 1, 11 (D.C.1995)); *see also In re C.T.*, 724 A.2d 590, 598 (D.C.1999). We granted relief in each of those cases because the trial court had not given sufficient consideration to the alternate custody arrangements proposed by the natural mother. In this case, by contrast, the fitness of T.J.'s proposed caretakers was the focal point of the trial and of the court's detailed findings of fact and conclusions of law.

S.M., the proposed caretaker for M.J., had no relationship with M.J. and had not seen her since she was a baby. Ms. M. was a single mother with three young children of her own for whom she was caring. She had a tenth grade education and her only financial support was public assistance. Ms. M. was not eager to adopt M.J., preferring to act as a temporary custodian for M.J. until T.J. was capable of taking M.J. back. R.A., the proposed caretaker for Ja.J. and Je.J., had no relationship with either of the boys and had not seen them for several years. Ms. A. was fifty-two years old and was not employed full time. Although Ms. A. did some part time work as a babysitter, she had never cared for children with the emotional and behavioral problems that Ja.J. and Je.J. had exhibited (*see infra*). Ms. A. lived with her fiancé R.G., who was unemployed because of a disability. Mr. G.'s testimony created serious doubt as to his interest and capacity to serve as an effective parent for Ja.J. and Je.J. Furthermore, an adoption recruitment specialist testified that the couple's one-bedroom apartment was not big enough to accommodate the boys. Like Ms. M., Ms. A. preferred to act as a temporary custodian and did not want to adopt Ja.J. and Je.J. unless it was necessary. The court meticulously weighed the proposed caretakers' uncertain levels of commitment, inadequate or doubtful qualifications and abilities, and lack of preparedness to serve as stable surrogate parents against the particular needs of Ja.J., Je.J. and M.J. The court found by clear and convincing evi-

dence that it would be contrary to the children's best interests to place them with the persons chosen by T.J., "because they do not offer permanent and stable homes and cannot meet the physical, mental, and emotional needs of the children." In reaching that decision, the court carefully exercised, and certainly did not abuse, its discretion.

▮ T.J. also argued against termination of her parental rights with respect to Ja.J. and Je.J. on the ground that their prospects for adoption were limited in view of their ages (nine and eleven at the time of trial), behavioral and emotional problems (both boys had been diagnosed with attention deficit hyperactivity disorder), and, in the case of Ja.J., mild mental retardation. "[A]bsent ... unusual circumstances ... the reasonable prospect of adoptive placement need not be established on a case-by-case basis before termination can be ordered as a disposition in neglect proceedings." *In re A.W.*, 569 A.2d 168, 173–74 (D.C.1990). Nonetheless, the trial court "must consider the adoptive prospects of the child along with other relevant factors." *In re C.T.*, 724 A.2d at 598 n. 9 (D.C.1999). In extreme cases, "we have declined to uphold a TPR order when the potential adverse psychological effect on the child of severing the legal relationship between parent and child outweighed very minimal prospects for the child's adoption." *Id.* (citing *In re A.S.C.*, 671 A.2d 942, 951 (D.C.1996) and *In re A.B.E.*, 564 A.2d 751, 756–57 (D.C.1989)). When there still may be value in retaining at least "the stabilizing influence, and the sense of identity, that some continuing legal relationship with natural relatives may ultimately bring," termination of parental rights may be unwarranted if there is no

reasonable likelihood of adoption because of "the absence of any substantial good to be achieved" for the child. *A.B.E.*, 564 A.2d at 757.

We are satisfied that the trial court here did not abuse its discretion in concluding that this is not such an extreme case. On the one hand, the record does not establish and the court did not find that Ja.J. and Je.J. were virtually unadoptable. The children in *A.B.E.* and *A.S.C.* suffered from more severe problems than those that beset Ja.J. and Je.J., each of whom reportedly had made substantial progress overcoming or reducing their behavioral and emotional issues while in foster care. Despite his mild retardation and hyperactivity, Ja.J. was described as "an attractive, friendly, affectionate child who enjoys many sports and activities.... [and who] has a good relationship with his current foster parents and foster siblings." Je.J. was described as "an intelligent, talkative, friendly, and inquisitive child.... [a] very bright handsome boy with a pleasing personality and ... a good relationship with his current foster parents." One family already had expressed interest in adopting both Ja.J. and Je.J. as part of a sibling group despite their behavioral issues and special needs (though ultimately this family was not a viable placement option).[1] In view of these factors, we defer to an experienced trial judge's assessment that though the boys' adoption prospects were "narrow[ed]..., an aggressive adoption recruitment effort may obviate this issue." *Cf. In re Tw.P.*, 756 A.2d 402, 411 (D.C. 2000) (upholding TPR where trial court found children suitable for adoption notwithstanding the fact that their ages and special needs would make it "difficult to find appropriate adoptive homes" for

---

1. We think it not unfair to count the interest of the caretaker proposed by T.J. herself as additional evidence that Ja.J. and Je.J. were adoptable, though the trial court did not rely on that fact.

them). On the other side of the ledger, while Ja.J. and Je.J. continued to value their connection to T.J., the trial court found that T.J. was an unfit parent whose relationship with the children was virtually nonexistent. The court's comprehensive findings in this regard, which we have no reason to repeat here, are "unassailable." *A.W.*, 569 A.2d at 172. On balance, and after taking careful account as it also did of the pertinent considerations listed in D.C.Code § 16–2353(b), the court reasonably could find by clear and convincing evidence that terminating T.J.'s parental rights in order to give Ja.J. and Je.J. their best chance at a permanent, stable relationship was in the boys' best interests.

For the foregoing reasons, the judgment on appeal terminating appellant's parental rights with respect to Ja.J., Je.J. and M.J. is

*affirmed.*