910 A.2d 293 (2006)
In re Petition of A.T.A.; T.H., Appellant.
Nos. 04-FS-1046, 04-FS-1047.
District of Columbia Court of Appeals.
Argued March 23, 2006.
Decided November 9, 2006.
Charles J. Szlenker for appellant.
Stephen L. Watsky, Washington, for appellee.
Before WASHINGTON, Chief Judge, GLICKMAN, Associate Judge, and *294 ISCOE,[*] Associate Judge, Superior Court of the District of Columbia.
WASHINGTON, Chief Judge:
Appellant T.H., the biological mother of twins G.H. and L.H. ("twins," "adoptees," "children," or "G.H. and L.H."), is appealing the Superior Court's order 1) granting the adoption petition of A.T.A., the twin's foster mother, and 2) denying the competing adoption petition of L.C.L. and R.M.L., T.H.'s cousin and cousin-in-law respectively. We affirm.

I.
In November 2000, T.H. gave birth to G.H. and L.H. at Howard University Hospital. As a result of T.H.'s serious and longstanding drug addiction the twins were born several weeks premature and with cocaine present in their systems. Neither T.H. nor H.E., the twin's biological father, took custody of the twins when they were ready for discharge. The twins remained at the hospital for ten days after being ready for discharge, and soon thereafter a neglect case was opened for each child. The twins were placed under the care of Lutheran Social Services ("LSS"), which first housed the twins in an institutional foster home and then placed with a foster parent. On March 31, 2001, both parents stipulated the children were neglected pursuant to D.C.Code §§ 16-2301(9)(C) & (G) (2001). Although the stipulation articulated a goal of reunification, and reunification efforts with the parent continued, LSS was ordered to explore pre-adoptive placement options at a disposition hearing held on April 24, 2001.
Thereafter A.T.A. was identified by LSS as a pre-adoptive placement for the twins. The twins were placed with A.T.A. on July 13, 2001, and have since lived with A.T.A. Sadly, by the time of the permanency hearing, which was held on December 11, 2001, the twin's biological father had died, and T.H. had not attempted to resolve her longstanding drug addition, despite the government's attempt to assist T.H. with substance abuse treatment and housing referrals. On that date, the permanency goal for the twins was changed to adoption. A.T.A. immediately expressed her interest in adopting the twins and the court ordered A.T.A. to be appointed counsel to assist her in the adoption processn Unfortunately, A.T.A. was not appointed counsel in a prompt fashion. On March 14, 2002, A.T.A. filed the necessary forms pro se.
Despite previous failed attempts to find family placement options for the twins L.C.L., T.H.'s estranged cousin, and her husband, R.M.L. contacted LSS on March 11, 2002, stating that the couple had just learned about the twins and wished to adopt them. Before meeting the twins for the first time on April 2, 2002, the Ls filed a complaint in the Superior Court seeking custody of the twins, and also filed petitions for adoption on June 19, 2002. Upon the Ls filing their petitions for adoption, T.H. withheld her consent to A.T.A.'s petitions for adoption in favor of adoption by the Ls.
After considering all the testimony and opinions presented in the case, the trial court concluded A.T.A. established, by clear and convincing evidence, that T.H. was withholding her consent to A.T.A.'s petitions for adoption of the twins against their best interests. The trial court went on to conclude that despite T.H.'s clear preference to have the L's petitions granted, and the weighty consideration that must be accorded to her choice, A.T.A. established, by clear and convincing evidence, that it was in the best interests of *295 the twins to have A.T.A.'s petitions granted. On appeal T.H. contends that the trial court erred by failing to give her choice of caretaker sufficient weight.

II.
Although a trial court normally requires the consent of a biological parent to grant a petition for adoption, a trial court may grant a petition for adoption without the biological parent's consent if the court determines, by clear and convincing evidence, that the biological parent is withholding his or her consent contrary to the child's best interest. D.C.Code §§ 16-304(a), (b)(2)(A), (e) (2001). We have held that when the trial court makes such a determination, the trial court is required to carefully consider the six factors enumerated in D.C.Code § 16-2353(b) (2001).[1]
This court reviews the trial court's determination of whether a parent is withholding consent contrary to the best interests of the child for abuse of discretion. In re T.J., 666 A.2d 1, 11 (D.C.1995). "We then evaluate whether the trial court's decision is `supported by substantial reasoning drawn from a firm factual foundation in the record.'" Id. (quoting In re D.I.S., 494 A.2d 1316, 1323 (D.C.1985)). In this case, the trial court carefully considered the six factors and explained in great detail its conclusion that T.H. was withholding her consent to A.T.A.'s petitions for adoptions of the twins contrary to the twin's best interest, and on that basis, we have no difficulty affirming the trial court's decision.
In rendering its decision the trial court made the following findings. With respect to the first factor, due in large part to the testimony of Dr. Jennifer Carter, the only expert to testify at trial who observed the twins both with A.T.A. and the Ls, the trial court found that the continuity of the children's care was best served by allowing the twins to remain with A.T.A., their primary caretaker. Although the trial court recognized that both A.T.A. and the Ls have the capacity to parent the twins and that there is a positive emotional relationship between the twins and each of these adults, the trial court also noted that the most important of these relationships is the one with A.T.A. because the twins had lived with A.T.A. during the critical time period of six to sixteen months, the period when attachment first forms.[2] Moreover, the trial court found A.T.A. has been a wonderful caretaker since the twins were first placed with her in July 2001, and the twins have thrived under her care.
*296 The record also shows that the physical, mental, and emotional health of A.T.A. is exemplary, and that she is exceptionally suited to care for the physical, mental, and emotional needs of the twins. Not only does A.T.A. provide a stable, loving, and moral household for the children, A.T.A. is also experienced to address the twin's special medical needs stemming from their prenatal cocaine exposure and premature birth. With respect to the Ls, although there was no reason to doubt the current physical, mental or emotional health of L.C.L., the trial court was notably concerned by L.C.L.'s lack of candor to the trial court with respect to her previous drug use, which resulted in L.C.L.'s admittance into a residential drug treatment program on two occasions. The trial court was also particularly concerned about the indicia of immaturity R.M.L. demonstrated during the proceedings. Specifically, the trial court was concerned about R.M.L.'s failure to disclose prior domestic relations action during discovery and his apparent lack of motivation to carefully respond to clinical test questions posed by the court-appointed psychologist. There was no indication the trial court doubted the Ls love for the twins, however, the trial court found its concerns regarding the Ls weighed in favor of A.T.A.
With respect to the third factorthe twin's quality of interactions with family membersthe trial court also found that the twins would be better served if placed with A.T.A., the only party willing and eager to maintain and foster the twin's familial relationships. To maintain familial ties, A.T.A. and Ms. N., the adoptive mother of the twin's three siblings, independently agreed that the five siblings should meet, at least once a month. Similarly, A.T.A. expressed interest in having the twins maintain a relationship with their biological mother and the Ls because A.T.A. believes the twins have done well in their care and that they are attached to the family. Unlike A.T.A., however, L.C.L. has made no affirmative steps to foster any contact between the twins and their biological siblings. Moreover, L.C.L. stated that she would terminate any contact the twins had with A.T.A. unless a qualified therapist determined that such contact would be in the children's best interest. Finally, the undisputed fact that the children were abandoned at birth by T.H. coupled with T.H.'s continued drug abuse weighs factors (3A) and (5) heavily in favor of A.T.A.
On balance, the foregoing factors weigh heavily in favor of a finding that T.H. withheld her consent to A.T.A.'s adoption petitions contrary to the best interest of her children. Thus, under the circumstances, we cannot find an abuse of discretion.

III.
Finally, T.H. contends the trial court erred in granting adoption of the children to A.T.A. as opposed to the Ls based on the trial court's failure to give weighty consideration to T.H.'s choice of caretaker. This court has previously held a competent "parent's choice of a fit custodian for the child must be given weighty consideration which can be overcome only by a showing, by clear and convincing evidence, that the custodial arrangement and preservation of the parent-child relationship is clearly contrary to the child's best interest." 666 A.2d at 11 (quoting In re Baby Boy C., 630 A.2d 670, 673 (D.C. 1993)). Although there is a question as to whether the holding we announced in In re T.J. is applicable in this case,[3] the trial *297 court proceeded under this belief and therefore, we review the trial court's decision for an abuse of discretion with this weighty consideration element in mind. In re Ja. J., 814 A.2d 923, 925 (D.C.2002).
The weighty consideration mandated by In re T.J., requires the trial court, to assess whether the natural parent's choice of a caretaker is overcome, by clear and convincing evidence, that the best interest of the child would be met by a competing applicant. If the trial court has not given sufficient consideration to the natural parent's choice, however, we have generally reversed the trial court's decision. See In re F.N.B., supra note 4 (reversing and remanding to the trial court for further exploration of the biological mother's choice for caretaker); In re C.T., 724 A.2d 590 (D.C.1999) (reversing and remanding to the trial court for failing to sufficiently consider the natural parents' preference to have the children placed with their paternal grandmother). In this case, however, the fitness of the Ls as the proposed caretakers was the focal point of trial and of the court's detailed findings of fact and conclusions of law.[4]
Based on the trial court's detailed findings, we find the great weight given to T.H.'s choice of caretaker was overcome by the best interests of the twins. In making its determination the trial court incorporated its findings as previously stated, and made additional findings. The trial court concluded, based heavily on the opinion of Dr. Carter, the court-appointed neutral expert, that it was in the best interests of the twins to not have their relationship with their primary caretaker, A.T.A., disrupted. The trial court's finding is also supported by the opinion of the guardian ad litem ("GAL") who waited to give his opinion at the conclusion of the hearing, after hearing all the testimony and expert opinions. Although the GAL believed both A.T.A. and the Ls were well-qualified, the GAL opined it was in the best interests of the twins to grant A.T.A.'s petitions for adoption not only to maintain status quo and continuity for the twins, but also because of A.T.A.'s commitment *298 to maintain the twin's contact with their biological family members.
Furthermore, in considering the best interests of the children the trial court took care to note that A.T.A., and only A.T.A., had demonstrated a commitment to have the twins maintain and foster all their familial relationships, including with the competing petitioners, the Ls. When L.C.L., however, was asked about the children's ongoing need to see A.T.A., L.C.L. responded not by answering the question, but by describing how stressful such contact would be for her and her husband. Based on this testimony, as well as the other portions of the testimony by the Ls, the trial court concluded that the Ls' self-absorption and inability to consider carefully how their actions would impact the children was a clear detriment of the twin's best interests. Therefore, we are satisfied that under the circumstances, the trial court did not abuse its discretion in awarding custody of the children to A.T.A.
For the foregoing reasons, the decision of the trial court is
Affirmed.
NOTES
[*] Sitting by designation pursuant to D.C.Code § 11-707(a) (2001).
[1] The factors as set forth in D.C.Code § 16-2353 are:

(1) the child's need for continuity of care;
(2) the physical, mental and emotional health of all individuals involved;
(3) the quality of the interaction and interrelationship of the child with his family and caretakers;
(3A) consideration of a child's abandonment, if the child was left by his parent in a hospital located in the District of Columbia for at least 10 days following the birth of the child, and the parent's actions to maintain a custodial relationship or contact with the child;
(4) to the extent feasible, the child's opinion; and
(5) evidence of drug-related activity.
[2] The trial court made this finding despite the testimony of Dr. Frederic Phillips, a clinical psychologist called to testify on behalf of the Ls, which stated it was in the twin's best interest to be with the Ls because of the Ls ability to provide a two parent household. The trial court was within its discretion to credit the testimony of Dr. Carter over Dr. Phillips because Dr. Phillips could not support his opinions in any meaningful way and because he never observed the twins interact with A.T.A.
[3] The procedural posture of In re T.J. is different from the instant case. In In re T.J., T.J.'s biological mother was not consenting to a competing petition for adoption, but to a competing custody action and T.J.'s biological mother's parental rights had never been terminated. In this case T.H.'s parental rights had been properly terminated, but she nevertheless believed her choice of caretaker should be given the weighty consideration announced in In re T.J. Considering that we have also found that there are circumstances where a natural parent may have forfeited his or her right to direct the upbringing of his or her child, see e.g., In re F.N.B., 706 A.2d 28, 31 (D.C.1998), we are unconvinced that weighty consideration must apply in cases where parental rights have been terminated. We do not use this occasion, however, to make this determination because the trial court gave sufficient consideration to the biological mother's choice of caretaker in this case.
[4] We have also found a biological parent's choice of related caretakers should not be afforded the same weighty consideration where the neglected child had been in the custody of foster care for a considerable length of time before the biological parent demonstrated any interest in exploring possible familial placement options. In re An.C., 722 A.2d 36, 40-41 (D.C.1998). In In re An.C., the neglected children had lived with their foster mother for two years before the biological father suggested that the children should be placed with their paternal grandmother. Although in this case the twins have also been in foster care for two years before the Ls filed for adoption, the record does not indicate that T.H. was derelict in exploring family members who could be potential caretakers. Instead, the record indicates in this case, T.H. could not find any family member who would come forward to adopt the twins. Given our disposition of this appeal, we find it unnecessary to decide the extent to which our holding in In re An.C. is applicable here.